# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL CASE NO. 1:11cv245

CHARLES T. LEE,                                    )
                                                   )
            Plaintiff,                       )
                                                   )
            vs.                              )
                                                   )
NORFOLK SOUTHERN RAILWAY COMPANY,                  )
                                                   )
            Defendant.                       )
_____)

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Defendant's Motion for Summary Judgment [Doc. 27].

## PROCEDURAL HISTORY

The Plaintiff Charles T. Lee (Lee) initiated this action for employment discrimination on September 21, 2011. [Doc. 1]. Lee has been employed by Norfolk Southern Railway Company (NS) since 1998 and remains so employed. [Id. at 2]. Lee, who is African American, is required by the Federal Railroad Administration (FRA) to be a member of a union in connection with his employment by NS. [Id.]. The union and NS have entered into a collective bargaining agreement, pursuant to which NS is obligated to offer training and to develop and implement a seniority system to offer and award job

assignments. [Id. at 4]. Lee claims that the collective bargaining agreement was improperly applied by the Defendant at its Asheville location.  He asserts that this resulted in his being the object of racial discrimination in that he was refused training and seniority.  [Id.].  He also asserts that he complained about other NS employees violations of the FRA's "Blue Flag Regulations" by failing to keep switches locked while inspecting trains, but that these complaints were ignored. [Id. at 6].  Finally, Lee claims that he was disciplined for drinking alcohol while on duty while a Caucasian employee was not disciplined.  [Id. at 7].  In addition to these claims relating to training, seniority and discipline, Lee also alleges acts of racial harassment by co-workers and a supervisor. [Id. at 4-6].

The Complaint asserts racial discrimination on the basis of 42 U.S.C. §1981 rather than Title VII.  [Id. at 7].  Section1981 guarantees equal rights to make and enforce contracts; that is, "the making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. §1981(b). The discrimination, Lee claims, interfered with his rights under his employment agreement.[1]  [Id. at 8].  This claim therefore also relates to the collective

---

[1]In North Carolina, at-will employment relationships are contractual.  McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003).  "[S]uch relationships may therefore serve as predicate contracts for §1981 claims."  Id. (citation omitted).

bargaining agreement, the terms of which Lee claims NS violated. Finally, Lee alleged a claim for negligent retention of co-workers and supervisors. [Id. at 9-10]. He seeks both compensatory and punitive damages. [Id.].

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), cert. denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522 (citing Celotex

Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

> A party opposing a properly supported motion for summary judgment
>
> may not rest upon the mere allegations or denial of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of [a]ny proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal quotations and citations omitted).

     Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

**Does the Railway Labor Act preempt 42 U.S.C. §1981.**

NS has a collective bargaining agreement (Agreement) with the Brotherhood of Railway Carmen Division - TCU (the Union). [Doc. 28-1 at 36-

45].[2]  At all times relevant to this case Lee was employed as a carman with NS, and as such was required to be a member of this union.  [Doc. 1 at 2]. Lee has at all times been so employed. [Id.].  The Agreement specifies the manner in which an employee and union member, such as Lee, may bring claims and file grievances, outlines the procedures for promotions and training, and details the seniority system. [Doc. 28-1 at 36-45].  It also addresses rates of pay for employees in Lee's position and the circumstances under which such pay may be increased. [Id. at 44-45].  The Agreement prohibits discrimination on the basis of race and requires grievances related to such discrimination to be made in the manner provided therein. [Id. at 36-45; Doc. 33 at 12; Doc. 35-1].

Lee filed three grievances with NS pursuant to this Agreement: one claiming discrimination in not being allowed electrician training; one claiming a single instance of discrimination in rate of pay; and one asserting that his seniority had been calculated incorrectly. [Doc. 28-1 at 6].  Each grievance was resolved through the procedures prescribed by the Agreement. [Id.].

Lee alleges in his Complaint that due to an erroneous application of the collective bargaining agreement to his situation that he was discriminated

---

[2] Unless otherwise noted, the facts set forth are drawn from Plaintiff's deposition testimony [Doc. 28-1] and his contentions are based the allegations in his Complaint.

against on the basis of his race in that he was refused training, seniority, the opportunity for promotion and thus denied higher pay. [Doc. 1 at 2-4]. In addition, Lee alleges specific acts of racial harassment by co-workers as well as a supervisor, allegations which are treated separately below. [Id. at 4-6].

> Congress' purpose in passing the [Railway Labor Act] RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. To realize this goal, the RLA establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two classes of disputes. The first class, those concerning rates of pay, rules or working conditions, are deemed major disputes. Major disputes relate to the formation of collective [bargaining] agreements or efforts to secure them. The second class of disputes, known as minor disputes, grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Minor disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation. Thus, major disputes seek to create contractual rights, minor disputes to enforce them.

Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-53, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (internal quotations and citations omitted).

Lee's allegations in the Complaint specifically refer to the Agreement which, he claims, required NS "to train its employees in each and every aspect of their respective crafts." [Doc. 1 at 2]. "Part of the craft of the carman is to receiv[e] training on the rip track[.]" [Id.]. Lee claims that Caucasian carmen received this training while he did not, and that he was deprived of electrician training although Caucasian employees with less seniority were

allowed such training. [Id. at 3]. He also alleges that his supervisor refused to allow him to train for a commercial drivers license (CDL) which would qualify him for a vacation relief job, which afforded higher pay. [Id.].

Lee also asserts that NS failed to follow the seniority system required by the Agreement. By failing to train him, Lee maintains, he could never be qualified for higher paying positions and advancement. [Id.]. He was also allegedly passed over for first shift jobs in favor of Caucasian employees with less seniority. [Id. at 4].

> Defendant and its union, pursuant to the collective bargaining agreement contract, developed a seniority system that Defendant was supposed to use to award or offer assignments. Defendant and its employees did not apply the seniority system as developed. Instead, Defendant in 2008 adjusted how the seniority system was calculated at the Asheville yard, and Caucasian employees ... were given credit unfairly under the seniority system. ... [T]his misapplication of contractual seniority system rules was perpetrated by Defendant and its employees including supervisors.

[Id. at 4].

Finally, Lee alleged that Caucasian employees were not disciplined for failing to follow switch lock regulations and he was disproportionately disciplined for drinking on the job relative to a Caucasian employee who was not disciplined at all.[3] [Id. at 6-7].

---

[3]NS argues that Lee's separate claim for negligent retention of employees is also preempted by the RLA. The Court addresses this claim separately without considering

Lee's claims in each of these instances are based on alleged violation by NS of the Agreement, the terms of which governed Lee's employment. Hawaiian Airlines, 512 U.S. at 252; Ballew v. Continental Airlines, Inc., 668 F.3d 777, 783-84 (5th Cir. 2012); Dotson v. Norfolk Southern R.R. Co., 52 F. App'x. 655, 657 (6th Cir. 2002). The resolution of these claims necessarily involves the construction of the terms of the Agreement, a process which would intrude into the RLA's federal mechanism for interpreting and enforcing collective bargaining agreements in the railroad industry. Id.; Ballew, 668 F.3d 777.

> Where resolution of a [§1981] claim requires interpretation of a CBA [collective bargaining agreement], such claims are preempted by the RLA. Under the RLA, ... [w]here a claim is resolved by interpreting the terms of the CBA, it is a minor dispute. ... The RLA requires that minor disputes be submitted through the grievance procedures described in the CBA. If the parties cannot resolve minor disputes on their own, they are submitted to the National Railroad Adjustment Board for final resolution. The Board has exclusive jurisdiction over minor disputes, and a party cannot bypass the Board and take the dispute into federal court, except to enforce the Board's award.

Dotson, 52 F. App'x. at 657-58 (internal quotations and citations omitted).

The Court therefore concludes as a matter of law that Lee's claims relating to training, seniority, pay rates and promotions require consultation

---

whether the claim arises out of and requires construction or interpretation of the Agreement.

and interpretation of the Agreement and, thus, are preempted by the RLA. Id.; Emswiler v. CSX Transp., Inc., 691 F.3d 782 (6th Cir. 2012); Adames v. Executive Airlines, Inc., 258 F.3d 7 (1st Cir. 2001); Malobabich v. Norfolk Southern Corp., 2011 WL 1791306 (W.D.Pa. 2011). To the extent that Lee claims he was more severely disciplined for drinking alcohol while on duty than a Caucasian employee, he fares no better, as this also requires interpretation of the provisions of the Agreement regarding discipline. Therefore, these claims are preempted as well. Dotson, 52 F. App'x. at 657-58; Perrywatson v. United Airlines, Inc., 762 F.Supp.2d 1107 (N.D.Ill. 2011). Likewise, claims that Caucasian employees were not disciplined for violating lock switching regulations require consultation of the disciplinary provisions of the Agreement. Id.; Dotson, 52 F. App'x. at 657-58; Parra v. UAL Corp., 77 F.3d 489 (9th Cir. 1996). The Plaintiff's §1981 claims based on these allegations are therefore preempted by the RLA and must be dismissed.

The Plaintiff's §1981 claims based on specific instances of alleged racial harassment, however, present a more difficult issue. As stated above, the statutory scope of §1981 extends to the protection and preservation of contract rights. The RLA preempts all employment discrimination claims that involve a construction or application of the railroad employee's rights under his employment contract. Hence, logic would dictate that all §1981 claims of

9

a railroad employee regarding his employment would be preempted. See,
Allen v. Amalgamated Transit Union Local 788, 554 F. 2d 876, 880 (8th Cir.)
cert. denied, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed. 2d 176 (1977); Evans v.
Central of Ga. R.R. Co., 619 F. Supp. 1364 (NDGa 1985). Several Circuits,
however, have held or at least indicated to the contrary. These stand for the
proposition that §1981 actions are not preempted because they involve rights
arising by federal statute which are independent of the Agreement. Dotson,
52 F. App'x. at 657-58 (6th Cir.); Rabe v. United Air Lines, Inc., 636 F.3d 866
(7th Cir. 2011); Adams v. American Airlines, Inc., 202 F.3d 281 (10th Cir. 2000);
McAlester v. United Air Lines, Inc., 851 F.2d 249 (10th Cir. 1988). For the
reasons stated below, however, the Court need not decide this issue, because
NS is entitled to summary judgment on grounds other than preemption.


**Lee's §1981 claim based on hostile work environment.**

As noted above, Lee's claims based on specific instances of alleged
racial harassment arise pursuant to §1981. In order to establish that a
reasonable jury could find harassment sufficient to create a hostile work
environment, Lee must show that the conduct at issue was unwelcome, based
on his race and "sufficiently severe or pervasive to alter the conditions of
employment and create an abusive atmosphere." Spriggs v. Diamond Auto

Glass, 242 F.3d 179, 183 (4th Cir. 2001).[4]

On this point Lee has made a series of allegations in his Complaint presented a forecast of evidence in his deposition. Lee testified that on three occasions, a co-worker, David Manis, tried to provoke him into physical altercations. [Doc. 1 at 4; Doc. 34-1 at 75-76]. On the first occasion, Lee surmised that Manis was seeking an altercation from the fact that he "was just jumping inside the truck ... [s]o I turned around and I just looked at him." [Id. at 77]. Lee told Rick Bell, his supervisor, that Manis was "trying to start something with me." [Id.]. Bell "just smiled" at Lee. [Id.]. On a second occasion, Manis motioned for Lee to come over to where Manis was eating lunch. [Id.]. Lee reported to the other workers that Manis was "still trying to start a fight with me." [Id.]. On a third occasion, Lee also thought Manis was trying to start a fight with him and complained to a co-worker, Billy Rice. [Id. at 77-78]. Lee offered no objective proof that these incidents were related to racial harassment. In fact, Lee offers no objective evidence that these instances should be construed as attempts to begin an altercation.

In 2009 two supervisors were discussing a spot on a hill from which the

---

[4]The elements of a hostile work environment claim are the same under §1981 and Title VII. Id. at 184. Unlike a Title VII action, however, a plaintiff pursuing §1981 relief is not required to file a formal charge with the Equal Employment Opportunity Commission. UCBOCS West, Inc. v. Humphries, 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008).

whole rail yard could be seen. [Id. at 81-82]. They said that it would be a good spot to shoot a deer. [Id.]. Lee testified that he felt that they were obliquely referring to shooting him because he was African American. [Id.].

In late 2008, co-workers posted a photograph of a Caucasian girl and an African American girl on the outside of Lee's locker at work. Lee took this to be a reference to his two daughters, one of whom is bi-racial. [Id. at 82-89; Doc. 1 at 5]. At an undisclosed time shortly thereafter, someone placed a noose on Lee's locker. [Id. at 83-85]. The next morning, he complained to Mickey Langford, the mechanical supervisor. [Id.]. Langford told Lee "We're not going to make no big deal out of this ... but we'll look into it." [Id. at 85]. The day after that, Lee's other supervisor, Bell, told Lee that a co-worker, Buckner, had admitted to placing the noose on Lee's locker. [Id. at 86-87]. Buckner both called Lee at home and apologized in person at work. [Id.]. Lee did nothing further to complain about the incident.

When someone placed a trash bag on Lee's locker, Buckner commented that it was a body bag. [Id. at 88-89]. When Lee complained to Bell, Bell said, "It's a damn trash bag." [Id. at 89]. Lee did nothing further to complain about the incident.

Lee testified that Manis regularly called him "boy" and mentioned the Third Reich. [Id. at 90-93]. Lee never filed an EEO complaint concerning this

although there was information concerning how to do so posted in the main office. [Id.].  On two other occasions, Lee was called a "nigger" by co-workers. [Id. at 93-94].  Although he spoke with the union about this, he determined not to go further with the complaint out of fear of retaliation. [Id. at 94].

After having made complaints to management about such incidents, on July 29, 2009, co-workers placed a "Hurt Feelings Report" in Lee's work station.   [Doc. 1 at 7].  Lee felt this was done to mock his complaints. [Id.].

Even though several of these incidents standing alone may seem innocent, when at least some of them are taken together and taken in the light most favorable to the Plaintiff as the non-moving party, a reasonable jury could find that Plaintiff was the subject of incidents that were unwelcome and based on race.  E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (reasonable jury could find race-based harassment based on use by co-workers of word "nigger" and co-workers placement of blue-colored mop-head dolls in their offices with dolls hanging from nooses); Ocheltree v. Scollon Productions, Inc., 335 F.3d 325 (4th Cir.), cert. denied 540 U.S. 1177, 124 S.Ct. 1411, 158 L.Ed.2d 77 (2004) (describing conduct in the workplace from which a reasonable jury could find plaintiff to be an individual target of harassment due to her sex); White v. BFI Waste Services, LLC, 375 F.3d 288, 297 (4th Cir. 2004) (reference to an adult African American male as a "boy" is

a racial insult).

Likewise, a reasonable jury could find that these incidents were sufficiently severe to alter the working environment. Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011). Indeed, "the noose incident by itself constituted severe and pervasive conduct because of the deeply hurtful meaning of a noose to African-Americans." Alford v. Martin & Gass, Inc., 391 F. App'x. 296 (4th Cir. 2010); Okoli, 648 F.3d at 220 n.5 (internal quotation and citation omitted) (a single incident of harassment can be actionable if it is "extraordinarily severe"). Not only has Lee presented a sufficient forecast of evidence to survive summary judgment on the question of whether he subjectively found this work environment to be hostile or abusive but also that an objectively reasonable person of his race would have found it to be so. Id.; Harris v. Mayor and City Council of Baltimore, 429 F. App'x. 195, 201 (4th Cir. 2011) (citing Hoyle v. Freightliner, LLC, 650 F.3d 321, 333 (4th Cir. 2011)).

The Court has also considered "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Okoli, 648 F.3d at 220 (internal quotation and citation omitted). Such things as the noose incident taken together with the use of the words "nigger" and "boy" can be found by a jury to constitute a

pattern of conduct.  Cent. Wholesalers, Inc., 573 F.3d at 176; Spriggs, 242 F.3d at 185 (hostile work environment created through use of word "nigger"); White, 375 F.3d at 297.  Indeed, "the word 'nigger' is pure anathema to African-Americans."  Id.  "[N]o single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger.'"  Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir. 1993).

NS argues, nonetheless, that as a matter of law, it may not be held vicariously liable for Plaintiff's co-workers' creation of any such racially hostile work environment. [Doc. 7 at 3]. Lee's §1981 claim "therefore turns on ... whether there is a basis for imputing to [NS] liability for the conduct of" Lee's co-workers and supervisors.  Whitten v. Fred's, Inc., 601 F.3d 231, 243 (4th Cir. 2010).  The Court first considers Lee's claim as it relates to his supervisors.

"If the plaintiff's claim is based on the actions of [his] supervisor, the employer is subject to vicarious liability.  If the plaintiff did not suffer a tangible employment action, the employer has available to it an affirmative defense that may protect it from liability for damages."  Id. (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)) (other citations omitted).  Lee argues that his six month suspension for drinking

alcohol on the job was a tangible employment action. As set forth above, however, that pertains to disciplinary action that falls within the purview of the collective bargaining agreement, and thus is preempted.

Moreover, Lee has failed to present a forecast of evidence that there was any connection between any tangible employment action and any racial harassment. Tangible employment actions "are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." Ellerth, 524 U.S. at 762 The decision to suspend Lee due to the alcohol incident was not made by Bell or Langford, Lee's immediate supervisors, but rather by Graham McPherson, the Division Manager of Mechanical Operations for the NS Asheville location, and Thomas Hatcher, Senior General Foreman of the NS Asheville location. [Doc. 32]. As such, Lee's forecast of evidence fails to show that the alleged harassers had any role in the decision to suspend him, or that those deciding to suspend him did so out of any racial animus. Sanford v. Main Street Baptist Church Manor, Inc., 327 F. App'x. 587, 598 (6th Cir. 2009); Idusuyi v. State of Tennessee Department of Children's Services, 30 F. App'x. 398, 401 (6th Cir. 2002); Brown v. Perry, 184 F.3d 388, 395 (4th Cir. 1999). Indeed, there is no evidence that Bell or Langford had any authority to hire, fire or suspend any employee, including Lee. Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 291

(4th Cir.), <u>cert. dismissed</u> 543 U.S. 1132, 125 S.Ct. 1115, 160 L.Ed.2d 1090 (2005) (to survive summary judgment plaintiff must "come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer").

Not only has Lee failed to show that his suspension was decided by his supervisors, but he also failed to show that his supervisors' racial harassment of him was in any way a cause of the suspension. <u>Sanford</u>, 327 F. App'x. at 599. Lee has admitted the conduct which resulted in the suspension. [Doc. 34-1 at 37] ("I drunk the beer" and had it put on a separate ticket). Lee understood that pursuant to NS' rules and regulation, the appropriate discipline for that offense would be termination. [<u>Id</u>. at 47]. Instead, he received a six month suspension without pay. [<u>Id</u>.]. Moreover, Lee admitted that he does not believe that he was suspended due to his race. [<u>Id</u>. at 48]; [Doc. 34 at 9]. "Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense." <u>Lissau v. Southern Food Service, Inc.</u>, 159 F.3d 177, 182 (4th Cir. 1998). "If [Lee's suspension] did not result from his refusal to submit to [his supervisors' racial] harassment, then [NS] may advance this defense." <u>Id</u>. There is no evidence that the suspension was imposed by McPherson and Hatcher due to anything other

than the alcohol incident.  Id. Indeed, Lee has not presented any evidence that McPherson and Hatcher were even aware of the harassment.  Swann v. Source One Staffing Solutions, 778 F.Supp.2d 611, 619-20 (E.D.N.C. 2011). For these reasons, Plaintiff's forecast of evidence is insufficient to survive summary judgment on the issue of whether he suffered a tangible employment action as a result of any racial harassment.

Because of this failure in Plaintiff's evidence, NS is entitled to assert the Ellerth affirmative defense to defeat liability.  The elements of that defense are (1) that the employer "exercised reasonable care to prevent and correct promptly any [racially] harassing behavior" and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Ellerth, 524 U.S. at 765.  The evidence relevant to each of these prongs is intertwined.

Lee has conceded that NS established, disseminated and enforced an anti-harassment policy and complaint procedure and took reasonable steps to prevent harassment.  [Doc. 34-1 at 19, 28, 83-84].  Lee watched a corporate video about such procedure and received "EEO/Diversity Training" on an annual basis to insure that employees were aware of such procedures. [Id. at 83-84; Doc. 28-1 at 2-3, 16-34].  The record is clear that Lee was well

aware of the process for filing a grievance with the Equal Employment Office (EEO) concerning training, rate pay and seniority, having done so himself.[5] "[D]istribution of an anti-harassment policy provides compelling proof that the company exercised reasonable care in ... promptly correcting [racial] harassment." Barret v. Applied Radiant Energy Corp., 240 F.3d 262, 266 (4th Cir. 2001).

Lee admitted that although he knew about this policy and complaint procedure, he never filed a charge of race discrimination or harassment with his union or the EEO of NS. [Id. at 19, 28, 84]. "[P]roof that a plaintiff employee failed to follow a complaint procedure will normally suffice to satisfy the employer's burden under the second element of the defense." Brown, 184 F.3d at 395. Instead, Lee's claim is based on his immediate supervisors not taking his complaints seriously. The policy clearly stated that "if the employee is dissatisfied with the nonagreement supervisor's handling of the complaint, then the employee 'must report the complaint to NS' EEO office.'" [Id.; Doc. 28-1 at 5-6]. Lee admits, however, that he never filed a complaint with EEO. "If [§1981's] prohibitions against [racial] harassment are to be effective, employees must report improper behavior to [the appropriate] company

---

[5] As explained *supra*, the claims based on these issues are pre-empted. The fact that Lee followed through the grievance procedure shows, however, that he was aware of the EEO process.

officials." <u>Matvia v. Bald Head Island Management, Inc.</u>, 259 F.3d 261, 269 (4th Cir. 2001); <u>Caldwell v. Johnson</u>, 289 F. App'x. 579, 586 (4th Cir. 2008) ("The EPA was not made aware of a hostile work environment, and therefore could not have taken 'prompt remedial actions.'"). "[T]he law against [racial] harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." <u>Parkins v. Civil Constructors, Inc.</u>, 163 F.3d 1027, 1038 (7th Cir. 1998) (internal quotation marks omitted).

To the extent that Lee may have thought further complaints through the EEO would have been futile or might have resulted in retribution, he fares no better. "An employee's subjective belief in the futility of reporting a harasser's behavior is not a reasonable basis for failing to take advantage of any preventive or corrective opportunities provided by the employer." <u>Barrett</u>, 240 F.3d at 268. Likewise, an "employee's subjective fears of confrontation, unpleasantness or retaliation ... do not alleviate the employee's duty under <u>Ellerth</u> to alert the employer to the allegedly hostile environment." <u>Id</u>. (internal quotation and citation omitted); <u>Walton v. North Carolina Dept. of Agriculture and Consumer Services</u>, 2011 WL 5974560 (E.D.N.C. 2011), <u>affirmed</u> ___ F. App'x ___, 2012 WL 3634467 (4th Cir. 2012). For these reasons, the Plaintiff's forecast of evidence fails to dispute that the Defendant has met the elements

of the <u>Ellerth</u> defense, and thus failed to show that there is any genuine issue as to any material fact regarding the application of the defense. The Defendant, therefore, is entitled to summary judgment.

There remains Lee's claim that NS should be liable for the conduct of his co-workers who engaged in racial harassment. The Court has already determined that Lee has presented a sufficient forecast of evidence to show that the conduct of which he complains was unwelcome, was due to his race and was sufficiently severe to alter his work environment. The issue here is whether the conduct is imputable to NS. <u>Gilliam v. South Carolina Dept. of Juvenile Justice</u>, 474 F.3d 134, 142 (4th Cir. 2007) (citation omitted).

> An employer is liable for harassment by the victim's coworkers only if it knew or should have known about the harassment and failed to take effective action to stop it. Knowledge of harassment can be imputed to an employer if a reasonable person, intent on complying with [§1981], would have known about the harassment. Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment.

<u>E.E.O.C. v. Sunbelt Rentals, Inc.</u>, 521 F.3d 306, 319 (4th Cir. 2008).

In this regard, it is first noted that Lee admitted during his deposition that although he complained to his immediate supervisors as to some incidents, he never filed a grievance or charge of racial harassment with his union. [Doc. 34-1 at 18-19]. With the exception of the pre-empted EEO complaints based on training, rate pay and seniority, Lee never filed an EEO complaint with NS.

[Id. at 19-28]. Lee testified that although he was well aware of the EEO procedure, he did not take advantage of it out of fear of retaliation. [Id. at 28]. Moreover, concerning his six month suspension, Lee testified that he did not believe NS suspended him based on racial discrimination but because he had, in fact, broken a rule for which he could have been terminated. [Id. at 47-48].

As to incidents of racial harassment, Lee believed that a co-worker, Manis, was attempting to provoke him into a physical altercation. The evidence to which Plaintiff cites, however, shows that this belief was no more than speculation. This is insufficient to resist summary judgment. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (conclusory or speculative allegations do not suffice). Even if the Court were to accept these vague gestures as a forecast of evidence that Manis sought a fight with Plaintiff, there is nothing in the record to suggest that this was racially motivated. "The federal anti-discrimination statutes do not protect employees from hostility and abuse unless the objectionable conditions occur because of a protected characteristic." McDuffie-Smithson v. University of South Carolina, 2012 WL 3637736 **4 (D.S.C. 2012) (citation omitted).

The same reasoning applies to Lee's suggestion that his supervisors' discussion of deer hunting actually was a veiled threat to shoot him due to his

race.  Id.; <u>Sherman v. Westinghouse Savannah River Co.</u>, 263 F. App'x. 357, 371 (4th Cir. 2008) (subjective belief without more is insufficient to create a genuine issue of material fact) (citation omitted).  A reasonable jury could not conclude that this was either a reference to shooting Plaintiff or that the comment was racial in nature.  Similarly, Lee's belief that his receipt of a "Hurt Feelings Report" was based on his race is purely his subjective belief.  <u>Id</u>.; <u>McDuffie-Smithson</u>, 2012 WL 3637736 (incidents giving rise to bruised or wounded feelings premised on nothing more than rude behavior insufficient).

Those incidents are in contrast with the incident involving the noose. That action was objectively offensive.  Lee complained and his supervisors acted on the complaint.  The culprit was located and apologized.  Lee apparently considered the matter resolved because he took no further action concerning the incident.  <u>Alford</u>, 391 F. App'x. 296 (individuals who hung noose effigy apologized to plaintiff who reported the situation had been resolved; employer not liable).

The analysis is similar regarding the racial slurs directed at Lee.  He took no action at all concerning the incidents when he was addressed as "boy." "Just as an employer may not adopt a 'see no evil, hear no evil' [racial] harassment policy, an employee may not impute liability on an employer under a theory that the employer must exercise an all-seeing omnipresence

over the workplace." Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006). Unless employer is alerted to harassing behavior, there is no liability. Alford, 391 F. App'x. 296; McDuffie, 2012 WL 3637736 (plaintiff must show the employer knew or should have known about the harassment and failed to stop it). As to the other slur, Lee mentioned it to his union, but he admittedly took the issue no further. He asserts that he did so out of fear of retaliation, but his motivation is of no consequence. His forecast of evidence shows he did not communicate this to the management of NS. Plaintiff's forecast of evidence regarding the trash bag incident fares to better. The placement of a trash bag on Lee's locker is, in and of itself, not indicative of anything. It is only when it is taken together with Plaintiff's evidence that Buckner told Lee that it was a body bag that this could be indicative of racial harassment. Again however, Lee took no action. Id. There is no forecast of evidence that management was ever made aware of the comment that potentially could cause this to be a discriminatory event.

For these reasons the Plaintiff's forecast of evidence is insufficient to show a genuine issue of material fact as to the employer's liability for any racially discriminatory actions by Plaintiff's coworkers. Therefore, NS is entitled to summary judgment on the §1981 claim.

**Lee's claim based on negligent retention.**

In his Complaint, Lee alleged a cause of action against NS for negligent retention of his co-workers and supervisors who harassed him on the basis of race. [Doc. 1 at 9]. NS moved for summary judgment, arguing that Fourth Circuit precedent does not support any such claim when it is based on racial harassment. NS is correct. In <u>McLean</u>, 332 F.3d 714, the Court of Appeals held that a claim of negligent retention or supervision which is based on harassment or retaliation on account of race may not withstand summary judgment.

> [N]either harassment [n]or retaliation [is a] common law tort[ ] in North Carolina. In <u>Smith v. First Union Nat. Bank</u>, 202 F.3d 234 (4th Cir. 2000), we held that there was no private cause of action under North Carolina law for sexual harassment under [N.C. Gen. Stat.] §143-422.2. We stated that we agreed with the statement of the district court in <u>Mullis v. Mechanics & Farmers Bank</u>, 994 F.Supp. 680 (M.D.N.C. 1997), that absent a clear indication from the North Carolina courts or legislature "it would be inappropriate for a federal court to create a private right of action under [§143-422.2]." There is no reason to treat [racial harassment] any differently than we have treated sexual harassment, and in this case, we arrive at the same conclusion, and hold that there is no private right of action under North Carolina law for [harassment] under §143-422.2. Accordingly, summary judgment in favor of the defendants on account of negligent retention or supervision is affirmed.

<u>McLean</u>, 332 F.3d at 719.

Likewise, in this case, any claim that NS negligently retained Lee's supervisors and co-workers of necessity fails since North Carolina does not

recognize racial harassment as a common law tort. Id.; Webb v. Starbucks Corp., 2008 WL 4891106 (W.D.N.C. 2008). Indeed, it is telling that the Plaintiff failed to respond in any manner to this portion of the Defendant's motion. Fed.R.Civ.P. 56. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Bouchat, 346 F.3d at 522. Lee having failed to do so, NS is entitled to summary judgment.

**Lee's argument that NS is liable for disparate treatment.**

In his response to the Motion for Summary Judgment, Plaintiff argues that his claim for disparate treatment should survivie summary judgment. Defendant did not argue for summary judgment on such a claim. What makes Plaintiff's argument curious is that he has pleaded no such claim.[6] [Doc. 1]. Lee's first cause of action is based on hostile work environment, the elements of which are (1) the conduct at issue was unwelcome; (2) the conduct was based on his race; and (3) the conduct was "sufficiently severe or pervasive

---

[6]The language of Lee's cause of action based on §1981 tracks the elements for a claim of racial harassment. [Doc. 1 at 7]. He alleges that the Defendant through its employees intended to and did discriminate against him on the basis of his race, their conduct was unwelcome, and interfered with his rights to make and enforce contracts. [Id. at 7-8].

to alter the conditions of employment and create an abusive atmosphere." Spriggs, 242 F.3d at 183. In response to the motion for summary judgment, however, Lee argues that he has asserted a disparate treatment claim based on his six month suspension for drinking a beer, a disciplinary act which was not imposed on his Caucasian co-worker who also drank.

A party may not, however, amend the complaint via argument against summary judgment. "If a party could amend its complaint via summary-judgment briefing, Rule 15 and 16 and trial court scheduling orders would be meaningless." Hexion Specialty Chemicals v. Oak-Bark Corp., 2011 WL 4527382 **8 (E.D.N.C. 2011). In any event, no claim based on disciplinary conduct may be asserted because it has been pre-empted by the RLA. Dotson, 52 F. App'x. at 657-58; Perrywatson, 762 F.Supp.2d 1107.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 27] is hereby **GRANTED** and this action is hereby **DISMISSED** in its entirety.

Signed: December 12, 2012

Martin Reidinger
United States District Judge